# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

3M INNOVATIVE PROPERTIES
COMPANY and 3M COMPANY,

Plaintiffs,

v.

LOUIS M. GERSON CO., INC. and
GERSON PROFESSIONAL PRODUCTS,
INC.,

Defendants.

Civil No. 08-4960 (JRT/FLN)

**MEMORANDUM OPINION
AND ORDER CONSTRUING
CLAIM TERMS**

---

David J. F. Gross, James W. Poradek, Theodore M. Budd, and Jeya Paul,
**FAEGRE & BENSON LLP**, 90 South Seventh Street, Suite 2200,
Minneapolis, MN 55402-3901; Kevin H. Rhodes and Peter L. Olson, **3M
INNOVATIVE PROPERTIES COMPANY**, P.O. Box 33427, Saint Paul,
MN 55133-3427; and Hildy Bowbeer, **OFFICE OF INTELLECTUAL
PROPERTY COUNSEL**, 3M Center, 220-9E-01, Saint Paul, MN 55144,
for plaintiffs.

John A. Cotter, Thomas J. Oppold, and Carrie L. Zochert, **LARKIN
HOFFMAN DALY & LINDGREN LTD.**, 7900 Xerxes Avenue South,
Suite 1500, Minneapolis, MN 55431-1194, for defendants.

Plaintiffs 3M Innovative Properties Company and 3M Company (collectively,
"3M") and defendants Louis M. Gerson Co., Inc. and Gerson Professional Products, Inc.
(collectively, "Gerson") manufacture a variety of products including paint spray guns.
3M brought this patent infringement action against Gerson, alleging that Gerson infringed
a method patent assigned to 3M relating to paint spray guns.  The case is before the Court
to construe disputed claim terms in the patent-in-suit.

# BACKGROUND

This patent infringement action arises out of 3M's method patent for a paint spray gun reservoir that allows for the mixing of paint in a container that can be attached directly to a spray gun for painting, and then efficiently and cleanly removed. (3M's Opening Markman Br. at 1, 4-5, Docket No. 43.) 3M's invention is patented and recognized by U.S. Patent No. 7,374,111. U.S. Patent No. 7,374,111 (the '111 patent). The '111 patent has five method claims, of which only one – claim 1 – is disputed here. '111 patent col.16 ll.23-58.

The '111 patent sought to ameliorate problems that arose with prior art spray gun reservoirs. According to the '111 patent, prior art spray gun reservoirs were messy and required that the user be meticulous in mixing paint in separate containers, loading the paint into the reservoir, and later cleaning the apparatus and disposing of excess waste and filters – often with large amounts of expensive and hazardous solvents. '111 patent col.1 l.24 – col.2 l.21. The '111 patent mitigates or eliminates many of those problems. In particular, the '111 patent describes using a disposable liner with a lid for preparing and holding paint, which eliminates the need to use multiple containers for mixing and later holding paint for the spray gun. *Id.* col.2 l.23 – col.3 l.2. The liner is placed in an outer container and paint is added. *Id.* col.6 ll.13-16; col.16 ll.29-36. The liner, a lid, and an outer container are then attached to the spray gun and "the system is ready for painting." *Id.* col.16 ll.36-39. After use, the lid and liner may be removed from the outer container and either stored in the same container or disposed of. *Id.* col.6 ll.52-56; col.16

ll.43-47; col.16 ll.57-58.  In short, the patented invention streamlines the preparation and cleanup processes by eliminating the need for mixing cups and filters, as well as the need to thoroughly clean non-disposable reservoirs.

The '111 patent is one of seven U.S. patents and pending applications that arise out of a patent application submitted under the Patent Cooperation Treaty.  The first patent, U.S. Patent No. 6,820,824 (the '824 patent) was issued on November 23, 2004. (*See* Oppold Aff. Ex. 2, Docket No. 47.)  The remaining six patents or patent applications are continuations or divisionals of the '824 patent.  The '111 patent is a divisional of U.S. Patent Application No. 10/881,291 (the '291 patent application), which is a continuation of the '824 patent.  (*Id.*)  A related patent application, U.S. Patent Application No. 11/227302 (the '302 patent application), is also a divisional of the '291 patent application.

3M developed a line of paint preparation systems, marketed as 3M's Paint Preparation System, which embodies the invention of the '111 patent.  (Ex. 2, Docket No. 44.)  Gerson has also developed a system for using spray gun reservoirs, and markets it as the "Gerson Paint System" ("GPS").  On August 19, 2008, 3M brought this action against Gerson alleging that Gerson is infringing the '111 patent by using, actively inducing others to use, contributing to the use of, and selling the GPS to others.  (Compl. ¶ 11, Docket No. 1.)  After 3M filed this action, Gerson requested that the United States Patent and Trademark Office ("USPTO") conduct an *inter partes* reexamination of the '111 patent.  (Ex. 10, Docket No. 44.)  The USPTO granted Gerson's request, but

affirmed the validity of all five claims of the '111 patent without amendment.  (Exs. 11-12, Docket No. 44.)

**DISCUSSION**

**I.     CLAIM CONSTRUCTION PRINCIPLES**

Claim construction is a question of law for the Court.  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002).  "The purpose of claim construction is to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed."  *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1381 (Fed. Cir. 2009).  Claim terms are given their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).  To ascertain this meaning and define the scope of the invention, courts look to the words of the claims themselves, the specification, and the prosecution history of the patent.  *Id.* at 1314; *see also Masco Corp. v. United States*, 303 F.3d 1316, 1324 (Fed. Cir. 2002); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."  *Phillips*, 415 F.3d at 1314.  The context of the surrounding words of the claim term may be instructive on the ordinary and customary meaning of the term.  *Id.*  Courts also consider "[o]ther claims of the patent in question, both asserted and unasserted," to determine the ordinary and customary meaning of a claim term.  *Id.* "Because claim terms are normally used consistently throughout the patent, the usage of a

term in one claim can often illuminate the meaning of the same term in other claims." *Id.*

Differences in the claim language can also be a useful guide, and "different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (internal citations omitted).

Claims do not stand alone, but are part of "a fully integrated written instrument," which includes the specification. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed Cir. 1995). The specification is the single best guide to the meaning of a disputed term, and "claims must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted); *see also Vitronics*, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."). Courts, however, will not import a limitation from the specification into the claims. *Phillips*, 415 F.3d at 1320. The Federal Circuit has "repeatedly warned against confining the claims to . . . embodiments" described in the specification. *Id.* at 1323; *cf. id.* (holding that the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.").

In addition to considering the specification, the Court may also consider the patent's prosecution history, which is considered "intrinsic evidence." *Id.* at 1317 (internal quotation marks omitted). The prosecution history "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the

examination of the patent." *Id.* The prosecution history, however, "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* But the prosecution history may still "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citing *Vitronics*, 90 F.3d at 1582-83).

Although intrinsic evidence is of primary importance in construing a patent's claim terms, the Court may also rely on extrinsic evidence, which consists of "all evidence external to the patent and prosecution history, including expert inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Extrinsic evidence is less significant than intrinsic evidence in construing claim terms, and extrinsic evidence cannot establish a meaning of the claim term that is at odds with the intrinsic evidence. *Phillips*, 415 F.3d at 1317-18.

In construing claims, the Court will avoid adding extraneous limitations, "that is[,] limitations added wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim." *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950 (Fed. Cir. 1993) (internal quotation marks omitted). "[T]here must be a textual reference in the actual language of the claim with which to associate a proffered claim construction." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999); *see also Phillips*, 415 F.3d at 1312 ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . , we should never know where to stop." (internal quotation marks omitted)).

The Court is not "required to construe **every** limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). The Court may decline to adopt a construction because the disputed claim term has a plain and ordinary meaning, if that determination resolves the parties' dispute. *See, e.g.*, *Caddy Prods., Inc. v. Am. Seating Co.*, Civ. No. 05-800, 2008 WL 2447294, at *2 (D. Minn. June 13, 2008).

## II.  THE DISPUTED CLAIM TERMS

3M asserts that Gerson has infringed claim 1 of the '111 patent, which is the only independent claim in the patent. 3M and Gerson dispute the construction of three phrases in claim 1. The full text of claim 1 is as follows:

> 1.  A method of preparing a gravity fed liquid spraying apparatus comprising the steps of:
>
> a)  providing a liner having a base and sidewalls, or a sidewall, and an opening and **being capable of standing unsupported on the base with the side walls extended and upright**;
>
> b)  placing the liner in an outer container, wherein the container having a base and an open end at the top edge of the container;
>
> c)  with the container standing upright on the base and the liner positioned in the container with the sidewall or sidewalls of the liner extended upward from the base of the liner, adding liquid to the liner through the opening;
>
> d)  attaching to the combination of the outer container and liner **a lid which covers the opening of the container and the liner** and has an outlet, the combination of liner, outer container and lid comprising a reservoir;
>
> e)  connecting a spray gun to the outlet of the lid;
>
> f)  inverting the combination of the spray gun and reservoir so that the reservoir is above the spray gun;

g) removing the liner from the outer container together with lid, wherein **the lid engages the liner so that the liner can be lifted from the outer container together with the lid**.

'111 patent, col.16 ll.23-46 (emphasis added).

## A. Claim Limitation (a)

The parties dispute the meaning of the claim language "being capable of standing unsupported on the base with the side walls extended and upright." *See* '111 patent col.16 ll.26-28. 3M argues that the Court does not need to construe that language because it carries a plain and ordinary meaning that would be understood by a jury in the context of the '111 patent. In the alternative, 3M argues that the Court should construe the term "base" to mean "a bottom part."

Gerson's proposed construction has evolved since the parties' submitted a joint claim construction statement. Initially, Gerson asked the Court to construe the asserted claim language as follows: "The liner is able to stand **on its bottom, by itself, when empty, in a stable and non-collapsed state** with the sidewalls extended and upright." (*See, e.g.*, Joint Claim Construction Statement at 3, Docket No. 42 (emphasis added).) In Gerson's opening claim construction brief, Gerson asked the Court to further construe the language to require that the liner "be in a stable and non-collapsed state and . . . **cannot be altered or manipulated** to make it stand unsupported on its base." (Defs.' Claim Construction Br. at 24, Docket No. 46 (emphasis added).) In Gerson's responsive claim construction brief, Gerson asks the Court to construe the claim language to mean that the

liner cannot have "a rounded bottom." (Defs.' Resp. to Pls.' Opening Markman Br. at 6, Docket No. 65.)

Gerson concedes that "[t]he individual terms comprising the disputed limitation (a) should have their ordinary meaning." (Defs.' Claim Construction Br. at 14, Docket No. 46.) Gerson argues, however, that the Court must resolve a dispute about the **scope** of the asserted claim language, "being capable of standing unsupported on the base with the side walls extended and upright." (*Id.* at 14-15.) Gerson argues that "[b]y arguing against any claim construction by the Court, 3M invites error. . . . When there is a fundamental dispute over claim **scope**, even when there is no dispute over the meaning of the words themselves, it is the court's duty to resolve the claim scope for use in determination of infringement." (Defs.' Resp. to Pls.' Opening Markman Br. at 4, Docket No. 65.) To support its position, Gerson relies on the Federal Circuit case, *O2 Micro International Limited v. Beyond Innovation Technology Co.*, 521 F.3d 1351.

In *O2 Micro*, the Federal Circuit held that a district court erred by not resolving the parties' dispute over the scope of the asserted claim term, "only if." *Id.* at 1361-62. Although the parties did not dispute the meaning of the term, the parties disputed the scope of the term; that is, whether there were "exceptions" to the limitation "only if." *Id.* at 1361. The district court held that the term "only if" needed no construction, but did not determine whether certain exceptions applied to the claim language. *Id.* As a result, at trial each party submitted evidence to the jury regarding whether there could be exceptions to the asserted claim term. *Id.* at 1362. After a jury found the defendants

liable for infringement of the patents-in-suit, the defendants appealed. *Id.* at 1358. The Federal Circuit reversed and remanded.

The Federal Circuit held that because the determination of the scope of asserted claims is a question of law, "[i]n deciding that 'only if' needs no construction because the term has a well-understood definition, the district court failed to resolve the parties' dispute because the parties disputed not the **meaning** of the words themselves, but the **scope** that should be encompassed by this claim language." *Id.* at 1361 (internal quotation marks omitted). The court noted that "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate . . . when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id.* The Federal Circuit held: "When the parties present a fundamental dispute regarding the scope of the claim term, it is the court's duty to resolve it." *Id.* at 1362.

Under O2 *Micro*, the Court must resolve 3M's and Gerson's disputes regarding the scope of the claim language and the applicability of prosecution history estoppel. *See Caddy Prods.*, 2008 WL 2447294, at *2. *O2 Micro* does not hold that the Court will commit reversible error if it concludes that the terms in claim limitation (a) have their plain and ordinary meaning and that no construction is necessary – as suggested by Gerson – so long as the Court definitively resolves the parties' dispute over the scope of the claim language.

### 1. "by itself"

Gerson argues that the Court should construe the term "unsupported" to mean "by itself" because those terms are used "interchangeably" in the '111 patent. (Defs.' Claim Construction Br. at 15, Docket No. 46.) 3M argues that such a construction is redundant and that no definition of the term "unsupported" is necessary.

Although the '111 patent only claims the term "unsupported," the specification describes a "container" that is "capable of standing, unsupported, on the base with the side walls extended and upright," '111 patent col.2 ll.44-46; a fluid reservoir that "is capable of standing on its own," *id.* col.3 ll.3-8; a liner that is "self-supporting," *id.* col.5 ll.53-54; *id.* col.7 ll.3-4; *id.* col.15 l.52; and a container that "will stand upright, without support," *id.* col.14 ll.59-60.

The Court is not persuaded, however, that substituting the term "by itself" for "unsupported" would permit a trier of fact to better understand the meaning of that term. Gerson has not explained how the two terms are different or argued that "by itself" offers any better explanation of the term "unsupported." Claim construction "is not an obligatory exercise in redundancy," and the Court will not merely substitute synonyms for disputed claim language. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). The term "by itself" is synonymous with the asserted claim term "unsupported," and to the extent that the terms are distinguishable, the Court declines to construe claim 1 to include the limitation "by itself." *Cf. Motorola, Inc. v. VTech Commc'ns, Inc.*, No. 5:07CV171, 2009 WL 2026317, at *8 (D. Minn. July 6, 2009) ("With regard to meaning, where additional language may be unduly limiting, confusing,

or redundant, it is in a court's power to determine that no construction is necessary. A court may decline to adopt constructions that violate claim construction doctrine, such as improperly importing limitations, and may still construe terms to have their ordinary meaning.").

### 2. "when empty"

Gerson contends that the liner must be capable of standing unsupported on the base "when it is empty." (Defs.' Claim Construction Br. at 17, Docket No. 46.) Gerson argues that the claim language, specification, '111 patent prosecution history, and '302 patent application prosecution history support that limit on the scope of the asserted claim language. The Court disagrees.[1]

The '111 patent's claim language does not support Gerson's construction. Gerson argues that the logic and grammar of the claim language require that the patented method's steps be performed sequentially. *See Altriris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) (reciting a two-part test to determine whether a method claim must be performed in a sequential order). According to Gerson, because limitation (a) claims a liner that is capable of standing unsupported on its base, limitation (b) teaches putting the liner in an outer container, and limitation (c) describes adding liquid to the liner, the claim language requires that the liner be capable of standing

---

[1] When the Court construes claim terms, "there must be a textual reference in the actual language of the claim with which to associate a proffered claim construction." *Johnson Worldwide*, 175 F.3d at 990. Gerson has not identified any portion of the asserted claim language that the term "when empty" would explain or interpret.

unsupported on its base when it is empty.[2]  Even if the Court assumes that the '111 patent's steps must be performed sequentially, Gerson's argument assumes that one would not engage in the patented method with a liner that is already filled with some liquid.  The intrinsic record does not support such an assumption.  Indeed, the term "empty" is not found anywhere in the '111 patent.

The specification also does not support Gerson's proposed construction.  In support of its construction, Gerson notes that the specification describes the liner as being able to "stand upright, without support, **while it is being filled** and also afterwards." '111 patent, col.14 ll.60-61 (emphasis added).  The specification language Gerson cites is incomplete.  The full text states states: "As a **further alternative**, an article of the type shown in FIG. 19 can be used simply as a container, in which case it has the advantage that . . . the container will stand upright, without support, while it is being filled and also afterwards."  *Id.* col.14 ll.56-61 (emphasis added).  Thus, the cited specification language describes one of many alternative embodiments of the patented method.  "[A]lthough the specification often describes very specific embodiments of the invention," the Court will not confine the claims to those embodiments.  *Phillips*, 415 F.3d at 1323.  Here, Gerson asks the Court to impermissibly import a "when empty" limitation from the specification into the claim.  *See id.*

3M and Gerson cite the same portions of the '111 patent's prosecution history to support their construction arguments: an October 26, 2007, amendment to limitation (c)

---

[2] Gerson notes that the specification also requires that the described steps be performed in the order in which they are described.  *See* '111 patent col.6 ll.12-49.

of claim 1 of the '111 patent, which reads: "c) with the ~~liner~~ <u>container</u> standing upright ~~on the base~~ <u>and the liner positioned in the container with the sidewall or sidewalls of the liner extended upward from the base of the liner</u>, adding liquid to the liner through the opening."   (Oppold Aff. Ex. 8, Docket No. 47 (strike-outs and underline indicate removed and added claim language after the amendment).)   3M argues that the amendment eliminates any suggestion that the liner must be able to stand upright on its base when the liner is empty.  Gerson interprets the amendment differently, stating that the "capable of standing unsupported on the base" language in limitation (a) served as the antecedent basis for the limitation in limitation (c) that originally claimed "with the liner standing upright on its base, adding liquid to the liner through the opening."  According to Gerson, when the amendment changed the language in limitation (c), the "capable of standing" language in limitation (a) became "extraneous or unnecessary."  (Defs.' Claim Construction Br. at 19-20, Docket No. 46.)

Gerson's argument is confusing as it relates to the proposed limitation "when empty," and the Court concludes that the prosecution history does not inform the Court of the inventor's intent regarding whether the liner must be capable of standing unsupported on its base "when empty."  The amendment does not support a construction that the liner must be capable of standing upright before liquid is added.  Rather, the amendment **eliminated** a requirement that the liner necessarily be capable of standing upright on its base as liquid is added.  The amendment is also not probative in the Court's analysis because it is far from clear that the amendment surrendered a portion of the scope of claim 1.  *Cf. Phillips*, 415 F.3d at 1317 ("[B]ecause the prosecution history represents an

ongoing negotiation between the [USPTO] and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes.").

Without support in the '111 patent claim language, specification, or prosecution history for its proposed "when empty" limitation, Gerson points to the prosecution history of a related patent application, the '302 patent application, which like the '111 patent is a divisional of the'291 patent application. (*See* Oppold Aff. Ex. 2, Docket No. 47.) "[T]he prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent application." *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004).

First, Gerson argues that an amendment to the '302 patent application's claims informs the scope of the '111 patent claims.[3] Prior to a January 22, 2008 amendment, the '302 patent application claimed

> **a removable, collapsible, self-supporting liner, which, prior to adding a fluid to the liner, has a shape corresponding to, and is a close fit within, the interior of the reservoir**, wherein the liner has a base and sidewalls, or a sidewall defining a fill opening, the liner being capable of standing unsupported on the base with the sidewalls extended and upright . . . .

---

[3] 3M suggests that Gerson's argument regarding the "when empty" limitation relies in part on the doctrine of prosecution history estoppel. Unlike Gerson's arguments relating to other aspects of its proposed construction, however, Gerson does not appear to argue that 3M disavowed any protections during the prosecution of the '111 patent or related patents. (*See, e.g.*, Defs.' Claim Construction Br. at 20, Docket No. 46 ("The foregoing limitation of the related '302 Application is entirely consistent with the sequence of the method steps of claim 1 of the '111 patent and further supports Gerson's interpretation that the 'capable of standing unsupported on the base' means the line is empty . . . .").)

(Oppold Aff. Ex. 7, Docket No. 46 (emphasis added).) Gerson argues that the language supports its interpretation that the "capable of standing unsupported on the base," means that the liner is empty and standing by itself. (Defs.' Claim Construction Br. at 20, Docket No. 46.) The Court disagrees.

The claim language cited by Gerson was ultimately replaced or deleted in later amendments. (*See generally* Oppold Aff. Ex 7, Docket No. 47.) Moreover, the cited language does not support a requirement that the liner be capable of standing on its base unsupported when it is empty. Rather, the language states only that "prior to adding a fluid to the liner, [the liner] has a shape corresponding to, and is a close fit within, the interior of the reservoir."

Second, Gerson argues that in the prosecution of the '302 patent application, 3M's attempt to distinguish the invention from the prior art Kaltenbach patent, U.S. Patent No. 3,432,104 (the '104 patent or the "Kaltenbach patent"), demonstrates that 3M envisioned the invention as being able to stand unsupported when empty. 3M argued:

> According to Kaltenbach, "[t]he sides of the liner are pleated to allow the liner to expand when filled with the liquid. . . . [When comparing figures from each patent] it is apparent that Kaltenbach's liner is not self-supporting. When liner 20 is placed inside cup 30 and filled with liquid 26, the liner expands because the sides of the liner are pleated . . . but **when liner 20 is placed outside of cup 30 and does not have liquid in it, the pleated sides of the liner fold inwardly and the liner collapses to a partially open state** . . . . Thus, Kaltenbach's liner is unable to support itself; it is not "self-supporting" as required by Applicant's claims.

(Oppold Aff. Ex. 12, Docket No. 47 (emphasis added).) 3M's response, however, does not address the liner's state when it is full versus when it is empty. Instead, 3M explains

that the Kaltenbach liner is not able to stand on a base with sidewalls extended and upright without structural support from an outer container.

The Court notes that Gerson's resort to the prosecution history of the '302 patent application is particularly suspect given the lack of support for the "when empty" limitation in the '111 patent and file. Regardless, the Court concludes that the prosecution history for the '302 patent application does not inform the scope of the '111 patent claims, and there is no support for limiting the '111 patent such that the liner must be capable of standing unsupported on the base "when empty."

### 3. "in a stable and non-collapsed state" and "cannot be altered or manipulated"

Gerson argues that the scope of claim 1 is limited to a liner with a base that is capable of standing unsupported "in a stable and non-collapsed state." Gerson also contends that 3M disclaimed a liner that could be "altered or manipulated" in order to make it stand unsupported on its base. The Court concludes below that the intrinsic record does not support Gerson's construction and that 3M did not clearly and unmistakably disclaim the challenged scope during the prosecution of the '111 patent or related patents.

### a. "in a . . . non-collapsed state"

Gerson argues that a liner in a collapsed state would defeat two potential purposes of the liner as stated in the specification. Specifically, Gerson contends that a liner in a

collapsed state could not serve as a disposable container for mixing paint and would not permit empty liners to be stacked for storage.

The '111 patent teaches: "The general shape of the container 12 and, in particular, the fact that it is flat-bottomed and stable **when in the orientation shown in FIG. 2** makes it particularly suitable for use as a mixing receptacle[.]" '111 patent col.7 ll.9-13 (emphasis added); *id.* col.13 ll.54-58 ("A liner of the type **illustrated in FIG. 19** . . . is especially useful in receptacles in which substances are mixed together because there are no locations on the inside of the liner in which material can become trapped and remain unmixed." (emphasis added)). The specification also states that "[i]t has been found that the liner is typically capable of standing unsupported on its base 13A and this feature, although not essential to the use of the liner in the spray gun reservoir 11, may be of use for storage purposes." *Id.* col.13 ll.31-36.



Fig. 2

Fig. 19

As an initial matter, the claim language merely requires that the liner be "**capable** of standing unsupported on the base with the sidewalls extended and upright," *id.* col.16 ll.26-28 (emphasis added), and to **require** the liner to stand "in a . . . non-collapsed state" would impermissibly import a limitation from the specification.

Further, the specification notes that although the liners are "typically" capable of standing unsupported on the base, the feature is "**not essential** to the use of the liner in the spray gun reservoir." The specification also describes objectives that may be achieved by designing the product in accordance with the alternative embodiments, such as using the liners as mixing receptacles or designing the liners for use in stacking and storage. But "patentees [are] not required to include within each of their claims all of the[] advantages or features described as significant or important in the written description." *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004); *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003) ("An invention may possess a number of advantages or purposes, and there is no requirement that every claim directed to that invention be limited to encompass all of them."); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims."). The Court will not import such limitations from the alternative embodiments into the claim language. *See Phillips*, 415 F.3d at 1320, 1323.

In sum, the intrinsic record does not support Gerson's proposed limitation on the scope of claim 1. The Court next turns to Gerson's contention that 3M disclaimed certain aspects of claim 1's scope during the prosecution of the '111 patent and related patents.

## b.    "cannot be altered or manipulated"

Gerson argues that the Court should construe claim 1 to require that "the liner . . . cannot be altered or manipulated to make it stand unsupported on its base." (Defs.' Claim Construction Br. at 24, Docket No. 46.)

Statements made during the prosecution of a patent may be used to narrow the scope of patent claims, "since, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection." *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009) (internal quotation marks omitted). However, the Court will only "find that the applicant disclaimed protection during prosecution" if the disclaiming statements "constitute a clear and unmistakable surrender of subject matter." *Id.* (internal quotation marks omitted); *see also Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009) ("A disclaimer must be clear and unmistakable, and unclear prosecution history cannot be used to limit claims."). Statements made during the prosecution of related patents may be used to narrow the scope of claim language in the patent-in-suit. *Ventana Med. Sys., Inc. v. Biogenix Labs, Inc.*, 473 F.3d 1173, 1182 (Fed. Cir. 2006); *see also Phillips*, 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and

whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."). "But the doctrine of prosecution disclaimer generally does not apply when the claim term in the descendant patent uses different language." *Ventana*, 473 F.3d at 1182 (citing *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1078 (Fed. Cir. 2005) ("[T]he prosecution of one claim term in a parent application will generally not limit different claim language in a continuation application.")); *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1383 (Fed. Cir. 2003) ("Although a parent patent's prosecution history may inform the claim construction of its descendant, the [parent] patent's prosecution history is irrelevant to the meaning of this limitation because the two patents do not share the same claim language.").

### i.    The '302 patent application

Gerson contends that while prosecuting the '302 patent application, which, like the '111 patent, is a divisional of the '291 patent application, 3M disclaimed a liner that would have to be altered or manipulated to stand on its base unsupported.

During the prosecution of the '302 patent application, the USPTO rejected claim 1 in part over the Kaltenbach patent. At the time of the rejection, claim 1 of the '302 patent application claimed "a removable, collapsible, **self-supporting** liner, the liner having a base and sidewalls, or a sidewall, defining an inner cavity, and a fill opening." (Resp. at 2, Oppold Aff. Ex. 12, Docket No. 47 (emphasis added).) The Kaltenbach patent discloses an "[a]pparatus for spraying paint or other liquids" comprising an outer container and a

> sack-like inner liner, having opposed pleated sides, partially disposed within said cup shell and having its top end extending overly, outwardly and downwardly around said shell rim, and liner having opposed openings at its top end to engage with the pins on said cup shell, said liner top end to be sealed between cover sealing gasket and cup shell rim when said yoke hooked ends coact with pins on said cup shell.

'104 patent col.3 ll.47-55.

The USPTO stated, "With respect to the 'self-supporting liner', the Kaltenbach's liner is a self supporting liner because the liner could be self supporting (without collapsing) on any surfaces or inside the container, the limitation 'self-supporting' without any specific details is read on the Kaltenbach's liner." (Resp. at 3, Oppold Aff. Ex. 12, Docket No. 47.) 3M responded "that Kaltenbach's liner is not self-supporting," explaining:

> When liner 20 is placed inside cup 30 and filled with liquid 26, the liner expands because the sides of the liner are pleated . . . , but when liner 20 is placed outside of cup 30 and does not have liquid in it, the pleated sides of the liner fold inwardly and the liner collapses to a partially open state . . . . Thus, Kaltenbach's liner is unable to support itself; it is not "self-supporting" as required by Applicants' claims.
>
> . . .
>
> If Kaltenbach's liner was "self-supporting," then there would be no need to turn the top of the liner back over the rim of the cup to the extent shown in Figures 1 and 3, slip the openings 24 in the liner over pins 23 on the cup, or indicate that a pressure sensitive adhesive or a masking tape could be used if needed.

(*Id.* at 4-5.)

3M's response did not disclaim a liner that must be altered or manipulated to stand unsupported. The '302 patent application's claim language and the '111 patent's claim language differ: the '302 patent application claims a "self-supporting liner," while the

- 22 -

'111 patent claims a liner "capable of standing unsupported on the base." As a consequence, 3M's arguments during the prosecution of the '302 patent application are not relevant to the meaning of the asserted claim language and cannot limit the scope of claim 1. *See ResQNet.com*, 346 F.3d at 1383 ("Although a parent patent's prosecution history may inform the claim construction of its descendent, the '961 patent's prosecution history is irrelevant to the meaning of this limitation because the two patents do not share the same claim language.").

### ii. The '291 patent application

Gerson next argues that while prosecuting the '291 patent application, which is the parent of the '111 patent and the '302 patent application, 3M disclaimed a liner that would have to be altered or manipulated to stand unsupported on its base.

By contrast with the '302 patent application, the '291 patent application claim language is identical to the '111 patent's asserted claim language, with each claiming a liner "capable of standing unsupported on the base." (*See* Resp. Under 37 CFR § 1.116 at 2, Oppold Aff. Ex. 16, Docket No. 47.) During the prosecution of the '291 patent application, 3M distinguished Kaltenbach in a similar manner as it did when distinguishing Kaltenbach from the '302 patent application. 3M argued: "If Kaltenbach's liner was capable of standing unsupported, then there would be no need to turn the top of the liner back over the rim of the cup . . . , slip the openings 24 in the liner over pins 23 on the cup, or indicate that a pressure sensitive adhesive or a masking tape could be used if needed." (*Id.* at 10.) 3M also noted, referring to Figure 2 in the Kaltenbach patent, that

the Kaltenbach liner is not capable of standing unsupported because "the bottom end of liner 20 is sealed at 25 and from Figure 2 it is quite apparent that sealing the bottom end of the liner renders the liner incapable of standing unsupported." (*Id.*)



FIG. 2.

'104 patent, Fig. 2.

3M's response to the USPTO does not clearly and unmistakably disclaim a liner that must be altered or modified in order to stand unsupported on its base. 3M makes no mention of "alterations" or "modifications" to the Kaltenbach liner. Instead, 3M argues that given the sealed end of the liner as depicted in Figure 2 of the Kaltenbach patent, the Kaltenbach liner cannot stand unsupported on its base and only **appears** to stand upright in the cup because it is secured to the rim of the cup for support. Accordingly, 3M's arguments during the prosecution of the '291 patent application did not limit the scope of the asserted claims as argued by Gerson.

Gerson also points to 3M's November 3, 2008 response to a USPTO rejection of the '291 patent application over U.S. Patent No. 4,151,929 (the "Sapien patent"). 3M argued:

> While the Office Action asserts that the liner of Sapien is capable of standing unsupported on its base, there is nothing in the disclosure of

Sapien to support such a conclusion. Sapien describes the liner as having a bag-like body, collar and lid (see Sapien Column 3, lines 9-11). The collar is described as being made of a stiffer less pliable material having slots to cooperate with lugs on the outer container in order to support the liner on the container (see Sapien at Column 3, 17-29). Thus, Sapien does not teach or suggest a self supporting liner as claimed in the present invention. Rather, **the liner is supported by the stiffer collar latched onto lugs on the outer container**."

(3M's Responsive Markman Br. Ex. 18, Docket No. 52.)

3M's response to the USPTO does not clearly and unmistakably disclaim a liner that must be altered or manipulated to stand unsupported on its base. Instead, 3M argued that the Sapien liner – like the Kaltenbach liner – could not stand unsupported on its base and could only stand with the support of an outer container. 3M's argument relating to the Sapien patent does not support Gerson's proposed construction.

### c.     "in a stable . . . state"

Citing 3M's prosecution of European Patent Application No. 05020408 (the "EP408 patent application"), Gerson argues that the scope of claim 1 is limited to a liner that is able to stand "in a stable . . . state." Similar to the '111 patent, the EP408 patent application discloses "[a] method for use in a gravity fed liquid spraying apparatus, the method comprising" a first step of "a) providing a container . . . having a stable formed shape capable of standing unsupported on a base end of the container." (Oppold Aff. Ex. 17, Docket No. 47.) The European Patent Office rejected the claims in the first step over the Kaltenbach patent. (Defs.' Claim Construction Br. at 26, Docket No. 46.)

3M responded to the rejection, explaining that the first step in the EP408 patent application claimed a method of

> providing **a container having a formed shape that is stable** and capable of standing unsupported on a base end of the container. Figure[] 2 and Figure 15 show containers that are capable of standing unsupported on a base end and which have **a stable formed shape**. Also the description as filed refers at several places to the liner (container) being self-supporting and capable of standing unsupported on its base from which **it is implicit that the formed shape is stable**.

(*See* Oppold Aff. Ex. 17 at 2, Docket No. 47 (emphasis added).)

3M's argument does not limit the scope of claim 1. In particular, the prosecution history of the EP408 patent application does not appear relevant. First, Gerson cites no authority for the position that an unissued, European patent application's prosecution history could inform the scope of claim 1 of the '111 patent. Second, the EP408 patent application claims only one container, not a container and a liner as claimed in the '111 patent. (*Id.* at 2.) Further, the term "stable" in the EP408 patent application refers to the "formed shape" of the container, not the manner in which the container stands as Gerson now contends. Finally, the '111 patent claim language differs materially from the EP408 patent application, which claims a "stable formed shape." The Court declines to import a limitation from the related foreign patent application where the claim language in that patent application differs materially from the claims in the patent-in-suit. *See Ventana*, 473 F.3d at 1182; *cf. ResQNet.com*, 346 F.3d at 1383.

### 5. "cannot have a rounded bottom"

Gerson argues that while prosecuting the '824 patent, which is the parent of the '291 patent application, 3M disclaimed liners "having a rounded-bottom." Gerson asserts that "[i]f 3M is now permitted to argue that a rounded-bottom liner is within the scope of

claim 1 because the rounded-bottom could be pushed-in to form a 'base,' then claim 1 would read on the very type of liner that 3M disclaimed when seeking allowance of the identical limitation in claim 1 of the '111 Patent." (Defs.' Resp. to Pls.' Markman Br. at 6, Docket No. 65.)

During prosecution of the '824 patent, 3M attempted to obtain allowance for language claiming "A liner for use in the reservoir of a spray gun . . . . said liner being capable of standing, unsupported, on the base with the side walls or wall in the case of a cylindrical liner, extended and upright." (Oppold Aff. Ex. 20 at 3, Docket No. 54.) The USPTO rejected the claim over the prior art Donahue patent, U.S. Patent. No. 5,797,520 (the '520 Patent or the "Donahue patent"), which discloses "[a]n apparatus for dispensing a fluid at a predetermined rate . . . . The apparatus including a deformable liner adapted to hold the fluid and a tank having an inner surface defining a tank interior," *id.* at 1; *see also id.* col.4 l.50 (claiming "a deformable liner"). 3M responded to the USPTO's rejection over Donahue by arguing that the Donahue liner "would not stand upright and does not have a base." (Ex. 20 at 6-7.) Gerson contends that 3M's argument amounts to a clear and unmistakable disclaimer of rounded-bottom liners in the '111 patent. The Court disagrees.

The Donahue patent does not claim a rounded-bottom liner, and it is unclear how 3M could thus disclaim rounded-bottom liners when distinguishing Donahue from the '824 patent. Citing the Donahue patent specification, *see id.* col.2 ll.19-21; col.2 ll.44-47, and Figures 2 and 3 of the Donahue patent, Gerson argues that Donahue "discloses a disposable and collapsible plastic liner with **a rounded-bottom** as depicted in the

drawing figures." (Defs.' Resp. to Pls.' Opening Markman Br. at 5, Docket No. 65 (emphasis added).)



'520 patent, Figs. 2-3; *see, e.g.*, *id.*, Fig. 4.

The Donahue patent, however, claims only "a deformable liner," '520 patent col.4 l.50, and does not claim or teach a liner having a rounded bottom. The portions of the specification to which Gerson cites do not describe a liner with a rounded bottom. The figures Gerson cites depict only a deformable liner that takes the shape of the tank in which it is placed, and the figures, to the extent that they could inform the scope of the '111 patent claims, therefore do not support Gerson's proposed construction. *See, e.g.*, *id.*, Fig. 4.



Moreover, 3M argued to the USPTO only that "the bag or bladder of Donahue would not stand upright and does not have a base." (Oppold Aff. Ex. 20 at 7, Docket

No. 54.) 3M's response to the USPTO thus did not clearly and unmistakably disclaim "rounded-bottom liners" from the scope of claim 1. The Court rejects Gerson's proposed construction to that extent.

### 6. "on its bottom" or "a bottom part"

Although Gerson does not specifically argue that the Court should construe the term "base" to mean "bottom" or "bottom part," Gerson's proposed construction includes that interpretation. To the extent the Court were to conclude that construction of limitation (a) is necessary, 3M asks the Court to construe "base" as meaning "a bottom part." The Court concludes, however, that in light of the '111 patent claims and specification, no further definition of the term "base" is required.

In sum, Gerson does not argue that the Court should further construe or interpret the meaning of terms claimed in limitation (a). Rather, Gerson contends that the Court should limit the scope of claim 1 in accordance with the specification and under the theory of prosecution history estoppel. As discussed above, Gerson's arguments are without merit, and the Court concludes that the ordinary and plain meaning of the claim language in limitation (a) would be apparent to a person of ordinary skill in the art.

### B. Claim Limitation (d)

The parties dispute whether the claim language, "a lid which covers the opening of the container and the liner," '111 patent col.16 ll.37-38, requires construction. 3M argues that the Court need not construe that language because it carries its plain and ordinary meaning. Gerson argues that the Court should construe the claim language as "A lid

which covers the opening at the top edge of the outer container and the lid covers the opening of the liner."

Gerson notes that in limitation (b) of the '111 patent, 3M claims a "container having . . . an open end at the top edge of the container," *see* '111 patent col.16 ll.30-31, while 3M claims "a lid which covers the opening of the container" in limitation (d), *id.* col.16 ll.37-38. Gerson argues that the language in limitation (b) provides that antecedent basis for limitation (d). *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005). Gerson further notes that limitation (a), which claims "a liner having . . . an opening," '111 patent col.16 ll.25-26, provides the antecedent basis for limitation (d)'s claim of "a lid which covers the opening of . . . the liner," *see id.* col.16 ll.37-38. Given the claim language, Gerson argues that the term "opening" in limitation (d) refers to two different structural features of two different claim elements: the "open end at the top edge of the container" and the "opening of . . . the liner."

3M argues that because Gerson does not offer a construction of the term "opening of . . . the liner," Gerson implicitly acknowledges that the word "opening" does not require construction, and Gerson is trying to add a limitation to the claim "wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim." *Hoganas*, 9 F.3d at 950 (internal quotation marks omitted); *see also Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1325 (Fed. Cir. 2003). Further, 3M argues that the intrinsic record does not support a requirement that the lid cover "the top edge of the container." 3M also notes that the USPTO examiner added the language "an open end at a top edge" to limitation (b), (*see* Examiner's Am. at 2, Notice of Allowance,

Ex. 14, Docket No. 44), but not to limitation (d), and if the examiner had intended that limitation (d) mirror limitation (b), the examiner would have inserted the same language in limitation (d), (3M's Opening Markman Br. at 20 & n.5, Docket No. 43).

The USPTO examiner added the limitation (b) language, but elected not to insert the same language in limitation (d).  In those circumstances, the Court presumes that the terms in limitation (b) and limitation (d) have different meanings, are not interchangeable, and should not be similarly construed.  *See Bd. of Regents v. BenQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("Different claim terms are presumed to have different meanings."); *see also Seachange Int'l*, 413 F.3d at 1368-69 (describing the principle of claim differentiation as "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope").

In addition, the specification does not teach that the lid must cover the opening of the container at its top edge.  *See e.g.*, '111 patent, col.2 ll.63-65 ("Also in accordance with the invention, there is provided a spray gun comprising a fluid reservoir having a removable lid located in an opening in the reservoir."); *id.* col.3 ll.3-5 ("The present invention also provides a gravity-fed spray gun comprising a fluid reservoir having a removable lid located in an opening in the reservoir."); *id.* col.3 ll.15-19 ("[T]here is provided a fluid reservoir for attachment to a spray gun, the reservoir having a removable

lid which is located in an opening in the reservoir[.]").[4]  Because the intrinsic evidence

does not support Gerson's proposed construction, the Court rejects Gerson's arguments

relating to limitation (d).  The Court concludes that that the claim language has its

ordinary and plain meaning and no construction of the asserted claim in limitation (d) is

required.

## C.  Claim Limitation (g)

The parties dispute the meaning of the term "engages" in limitation (g)'s claim

that "the lid engages the liner so that the liner can be lifted from the outer container

together with the lid."  '111 patent col.16 ll.44-46.  3M argues that the Court does not

need to construe the language because it carries its plain and ordinary meaning.  In the

alternative, 3M asks the Court to construe the term "engages" as "comes into contact, fits

together, or interlocks with," resulting in a construction whereby "the lid comes into

contact, fits together, or interlocks with the liner so that the liner can be lifted from the

outer container together with the lid."  Gerson argues that the Court should construe the

term "engages" to mean "interlocks with and securely holds."

The Court begins with the claim language, which claims "removing the liner from

the outer container **together with lid**, wherein the **lid engages the liner so that** the liner

---

[4]  Gerson does not propose construction of step (d)'s term "opening" as "an open end,"
but rather asks the Court to construe the limitation as an "opening **at the top edge of the outer**
container."  Because step (d) requires only that the lid cover the opening of the container,
Gerson's construction would impermissibly add a limitation to the claims.  *See Phillips*, 415 F.3d
at 1323 (reaffirming the principle that the Court must not "read[] limitations from the
specification into the claim").

can be lifted from the outer container **together with the lid**." '111 patent, col.16 ll.43-46. The claim language thus depicts a type of engagement between the lid and liner "**so that** the liner can be lifted from the outer container together with the lid." '111 patent col.16 ll.45-47. The specification teaches a variety of engagements between the lid and the liner, and describes alternative embodiments for the claimed invention:

- "Advantageously, the lid . . . is formed with barbs . . . on its surface to engage and hold the top of the liner." '111 patent, col.6 ll.21-22.

- "As a further alternative, the lid . . . could be formed as an integral part of the liner . . . to which it could be connected by a hinge joint . . . . In that case, there is no need for the lid to fit inside the mouth of the liner to ensure that the lid and liner will be removed together from the container after use[.]" *Id.* col.7 ll.27-34.

- "If more positive engagement is required between the lid . . . and the liner . . ., the lid could be snap fit with the liner instead of push-fit as shown. The liner could, for example, be formed with an internal circumferential rib positioned to engage in a corresponding groove on the adjacent surface of the lid." *Id.* col.7 ll.42-47.

- "The form of the shaped portion . . . allows the lid . . . to be pushed into the mouth of the liner and also provides a recess . . . into which the edge of the liner can contract so that the lid is securely located." *Id.* col.7 ll.56-59.

#

The Court concludes that no construction of the term "engages" is necessary. First, "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). Construing "engages" to require that the lid "securely hold" the liner – as proposed by Gerson – would render superfluous the remainder of the claim language in limitation (g), i.e., "so that the liner can be lifted from the outer container together with the lid." *See Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770

(Fed. Cir. 1996) (rejecting a district court's claim construction because it rendered superfluous a claim requirement). Second, the specification teaches a variety of potential embodiments and engagements between the lid and the liner, and describes varying degrees of strength of such engagement. Therefore, "engages" covers a broader range of connections between lid and liner than the term "interlocks with and securely holds."

Accordingly, the Court rejects Gerson's proposed construction and concludes that the term "engages" has its ordinary and plain meaning.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court herby **ADOPTS** the construction of the claim terms as set forth in the Memorandum accompanying this Order.

DATED:  October 12, 2010
at Minneapolis, Minnesota.

_____s/ John H. Tunheim_____
JOHN R. TUNHEIM
United States District Judge