# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES CO. and CO., | Civil No. 08-4960 (JRT/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| LOUIS M. GERSON CO., INC. and GERS PROFESSIONAL PRODUCTS, INC., | |
| Defendants | |

David J. F. Gross, Theodore M. Budd, and Jeya Paul, **FAEGRE & BENSON LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402-3901; and Hildy Bowbeer, **OFFICE OF INTELLECTUAL PROPERTY COUNSEL**, 3M Center, 220-9E-01, St. Paul, MN 55144, for plaintiffs.

John A. Cotter and Thomas J. Oppold, **LARKIN HOFFMAN DALY & LINDGREN LTD.**, 7900 Xerxes Avenue South, Suite 1500, Minneapolis, MN 55431-1194, for defendants.

Defendants Louis M. Gerson Co., Inc., and Gerson Professional Products, Inc. (collectively "Gerson") have moved for summary judgment of non-infringement or, in the alternative, invalidity. Because there are genuine issues of material fact as to whether Gerson's product meets all claim limitations, and because Gerson has not demonstrated that the patent is invalid for obviousness, the Court denies Gerson's motion in its entirety.

## BACKGROUND

The instant motion for summary judgment focuses on a 3M invention for a paint spray gun reservoir that allows for the mixing of paint in a container that can be attached directly to a spray gun for painting, and then efficiently and cleanly removed.   3M's invention is patented and recognized by U.S. Patent No. 7,374,111 (the '111 Patent), which is related to several other patents, including U.S. Patent No. 6,820,824 (the '824 Patent).   The '111 Patent discloses five method claims, of which only one – Claim 1 – is independently disputed here.   '111 Patent col. 16, ll. 23-58.   3M developed a line of paint preparation system, marketed as 3M's Paint Preparation System ("PPS"), which embodies the invention of the '111  Patent.

Gerson also developed a system for using spray gun reservoirs, and markets it as the "Gerson Paint System" ("GPS").   On August 19, 2008, 3M brought this action against Gerson alleging that Gerson is infringing the '111 Patent by using, actively inducing others to use, contributing to the use of, and selling the GPS to others.   After 3M filed this action, Gerson requested that the United States Patent and Trademark Office ("PTO") conduct an *inter partes* reexamination of the '111 Patent.   The PTO granted Gerson's request, but confirmed the validity of all five claims of the '111 Patent without amendment.   (Reexamination Order, Decl. of Jeya Paul in Supp. of 3M's Memo. in Opp'n Exs. 10-11, Docket No. 105.)

During the claim construction process, Gerson requested construction of three phrases from Claim 1 of the '111  Patent.   The three phrases correspond to the three claim

steps Gerson contends in its summary judgment motion are not met when using the GPS product.

Gerson argues that the GPS product does not literally infringe the '111 Patent based on differences between the '111 Patent and GPS product in steps (a), (d), and (g) of Claim 1. Gerson also seeks a ruling of non-infringement by arguing that 3M has waived or abandoned that argument under the doctrine of equivalents by failing to comply with the Pretrial Schedule, and 3M has not provided a prior function-way-result test on a limitation by limitation basis. In the alternative, Gerson challenges the validity of the '111 Patent, arguing it has made a clear showing of *prima facie* obviousness based on the prior art.

## DISCUSSION

## I.       STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When reviewing motions for summary judgment

on infringement or invalidity, the Court must determine whether a genuine evidentiary dispute exists such that "a jury could decide the issue either way . . . ." *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1379-80 (Fed. Cir. 2007) (citation omitted).

## II.    MOTION FOR SUMMARY JUDGMENT ON NON-INFRINGEMENT

3M and Gerson disputed the construction of three phrases of the only independent claim of the '111 Patent, Claim 1.  Claim 1 – with the disputed phrases emphasized – states:

> 1.   A method of preparing a gravity fed liquid spraying apparatus comprising the steps of:
>
> a)   providing a liner having a base and sidewalls, or a sidewall, and an opening and **being capable of standing unsupported on the base with the side walls extended and upright**;
>
> b)   placing the liner in an outer container, wherein the container having a base and an open end at the top edge of the container;
>
> c)   with the container standing upright on the base and the liner positioned in the container with the sidewall or sidewalls of the liner extended upward from the base of the liner, adding liquid to the liner through the opening;
>
> d)   attaching to the combination of the outer container and liner **a lid which covers the opening of the container and the liner** and has an outlet, the combination of liner, outer container and lid comprising a reservoir;
>
> e)   connecting a spray gun to the outlet of the lid;
>
> f)   inverting the combination of the spray gun and reservoir so that the reservoir is above the spray gun;

g)      removing the liner from the outer container together with lid, wherein **the lid engages the liner so that the liner can be lifted from the outer container together with the lid**.

'111 Patent col. 16, ll. 23-46.

In a recent Order, the Court construed the disputed terms with their plain and ordinary meaning.  (*See generally* Docket No. 123.)

### A.      Literal Infringement of the '111 Patent

"The determination of whether a patent claim has been literally infringed involves two inquiries: whether the claims have been properly interpreted to determine their scope, and whether each limitation of the properly construed claims is found in the accused product or process."  *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990); *see also Sigram Schindler Beteiligungsgesellschaft mbH v. Cisco Sys., Inc.*, Civ. Nos. 09-72-SLR, 09-232-SLR, 2010 WL 2977552, at *14 (D. Del. July 26, 2010) (citing *BMC Res., Inc. v. Paymentech, LP.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007)) ("Direct infringement requires a party to perform each and every step or element of a claimed method or product."); *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994) ("Literal infringement is found where the accused device falls within the scope of the asserted claims as properly interpreted.").  In evaluating whether the product literally infringes, "each limitation of the claim must be met by the accused device exactly, [with] any deviation from the claim precluding a finding of infringement."  *Id.*

To succeed on its motion for summary judgment Gerson must show that the GPS product fails to meet one of the claim limitations, and that such a failure cannot be

genuinely disputed.   Thus, a genuine dispute about any claim limitation that Gerson argues the GPS product does not meet will undermine a motion for summary judgment, as each claim limitation is "material" to an infringement action.   According to the relevant steps of Claim 1, the '111 Patent invention is (1) capable of standing unsupported on the base with the sidewalls extended and upright, (2) has a lid which covers the opening of the container and the liner, and (3) has a lid that engages the liner such that the liner can be lifted from the outer container together with the lid.  *See* '111 Patent.

### 1.      Claim Limitation (a)

The first dispute involves whether the GPS liner's ability to stand unsupported on the base exists as a designed capacity or is an impermissible alteration which causes the GPS product to infringe.   3M contends that the GPS product literally satisfies step (a) of Claim 1 because the GPS liner can stand without the bottom inverted when it has liquid in it, and can stand unsupported when the rounded bottom is pushed into the liner.

Where a capability is part of the product design, adjustment by the user is permissible to make use of the capability.  *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002); s*ee also Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991).  Gerson asserts that for the GPS liner to have the capacity to stand unsupported, the rounded bottom has to be altered from its original formed configuration and pushed up inside the liner.  According to Gerson, there is no reason to do so when preparing the GPS product for painting and they would not

instruct a painter to fill the liner and mix the paint without the liner being in the container, presumably to prevent the container from tipping over.  Gerson suggests that users of the GPS product must avoid pushing in the bottom of the liner because doing so would keep the paint from being properly mixed, as the "metals" in the paint would get trapped in the creases and would make the ratio calculations on the outside of the container inaccurate.

Gerson primarily relies on *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551 (Fed. Cir. 1995), to argue that alteration or manipulation of a device does not create an infringement.  *High Tech* involved a claim relating to a hand-held endoscope comprised of a body member and a camera disposed in the body member, where the camera could be rotated within the housing.  *Id.* at 1552.  The allegedly infringing product was a camera fixed within a housing by two set screws that prevented rotation; however, by loosening the screws, the camera could be rotated.  *Id.*  The Federal Circuit reversed the district court's granting the patent holder's motion for a preliminary injunction, holding that "as designed, sold, and intended for use, the [allegedly infringing] camera is coupled to its housing.  The original and intended operating configuration of the device must be altered – by loosening the set screws – in order for the camera to rotate."  *Id.* at 1555.  The Federal Circuit concluded that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim."  *Id.*

The parties dispute whether pushing in the bottom of the liner would be considered an "alteration."[1]  The Court has rejected Gerson's proposed construction of step (a) that the "liner be capable of standing unsupported" when it is empty.  (Order at 17, Docket No. 123.)  In its claim construction order, the Court found that 3M has not disclaimed a liner that must be altered or manipulated to stand unsupported.  (Order at 22-25, Docket No. 123.)  Therefore, even if pushing in the bottom of the GPS liner is an alteration, the GPS product might still infringe because the **capability** exists for the bottom to be altered.  Unlike in *High Tech*, it is unclear that the rounded bottom of the GPS liner must be convex ("pushed out") to align with how it was "designed, sold, and intended to be used."  *See High Tech*, 49 F.3d at 1555.  Gerson has not shown that there is no genuine issue of material fact that the GPS product fails to meet step (a), thus summary judgment is not appropriate.

## 2.    Claim Limitation (d)

Gerson argues that it has not literally infringed step (d) of Claim 1 because "the bottom edge of the GPS lid sits inside and below the top edge of the outer container." (Def.'s Mot. for Summ. J. at 22 ("The GPS ring is 'seated' on the inside ledge of the outer container about 1/2 inch below the top edge of the outer container.").)  Gerson claims that the antecedent basis for the limitation enshrined in step (b) ("an open end at a

---

[1] 3M argues that pushing up the rounded bottom of the liner is not an alteration, and is instead use of a designed capability of the liner as it allows for two possible configurations, with the rounded bottom pushed "up," and with the rounded bottom extended.  (Paul Decl. Ex. 32 at 3 (step 6 "Save Unused Paint – Lift Unitized Lid/Liner from Cup, ***Push Up Liner Bottom & Stow***." (emphasis added)).)

top edge of the container") is a separate element from that in step (a) which refers to "an opening" without identifying a location.  Gerson believes the two uses of "the opening" in the claim limitations refer to two different structural features of two different elements (the liner and the outer container) referenced in two different steps of Claim 1.  (*Id.*)  Because the GPS product allegedly does not cover the "opening at the top edge of the outer container," Gerson argues its GPS product does not literally infringe step (d).

The Court declines Gerson's invitation to complicate straightforward language.  In its claim construction order, the Court concluded that the claim language for limitation (d) has its plain and ordinary meaning.  (Order at 32, Docket No. 123.)  Thus, Gerson's argument that the GPS product does not comprise a lid covering the opening of the container and the liner is unavailing.  At a minimum, there is a genuine issue of material fact as to whether this claim limitation is met and as a result, summary judgment is inappropriate.

### 3.    Claim Limitation (g)

Gerson's instructions for storage and disposal are to "lift unitized lid/liner from cup and stow," (Paul Decl. Ex. 6), which 3M argues confirms that the GPS product meets step (g) of Claim 1.  '111  Patent col. 16, ll. 44-46  ("the lid engages the liner so that the liner can be lifted from the outer container together with the lid.").  Gerson's argument is that the GPS lid merely **touches**, and does not **interlock with**, the GPS liner, which is distinguishable from the claim language that the lid "engages the liner." *Id.*  This emphasis is integral to Gerson's motion: "Because the wall of the lid does not touch the

wall of the liner, the only contact between the lid and the liner is the . . . 'lid flange' that sets on top of the 'liner flange,'" suggesting that the lid is not actually "engaging" the liner at all.  (Def.'s Mot. for Summ. J. at 14.)

The Court has construed the language of step (g) according to its plain and ordinary meaning.  (Order at 32-34, Docket No. 123.)  Gerson would require that the lid itself somehow form a bond with the liner to facilitate removal of the two together to "engage."  The Court has declined to so interpret the limitation language.  (*Id.*)  Gerson has failed to demonstrate that there is no genuine issue of material fact that the GPS product's lid and liner "engage with" each other as described in step (g).  Summary judgment is not appropriate.

## III.  INFRINGEMENT OF THE '111 PATENT UNDER THE DOCTRINE OF EQUIVALENTS

A patent may be infringed under the doctrine of equivalents "in situations where there is no literal infringement but liability is nevertheless appropriate to prevent what is in essence a pirating of the patentee's invention." *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870 (Fed. Cir. 1985), *overruled on other grounds, Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998).  Under the doctrine of equivalents, an accused product will be found to infringe a claim "if it performs substantially the same function in substantially the same way to obtain the same result."  *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (internal quotation marks and citation omitted).  "[N]on-infringement under the reverse doctrine of equivalents is a

question of fact." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008).

> Under the doctrine of equivalents, the patentee has an evidentiary burden:
>
> Pursuant to our precedent, **a patentee must . . . provide particularized testimony and linking argument** as to the insubstantiality of the differences between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. **Such evidence must be presented on a limitation-by-limitation basis.** Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.

*AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) (quoting *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)) (emphasis in original).

Gerson argues that 3M failed to conduct a function-way-result analysis as required by the Pretrial Schedule because 3M's claim chart includes only the language of the claims with conclusory assertions that the GPS product performs substantially the same function, in the same way, with the same result. Gerson contends that such a failure constitutes a waiver or abandonment of 3M's argument that the GPS product infringes on the '111 patent under the doctrine of equivalents.

Gerson filed its motion for summary judgment before the Court rendered its claim construction order. Accordingly, both parties were forced to rely on arguments made during the claim construction phase to address Gerson's motion for summary judgment. This has necessarily led to a situation where 3M **could not** have completed a function-way-results analysis because it did not know if one was needed. Thus, 3M's failure to

conduct an adequate function - way - result analysis does not bear on the motion for summary judgment, or have a preclusive effect on future filings.

As the Court has now construed the claim language in a manner **not** inconsistent with literal infringement, 3M can conduct a complete function-way-result analysis if it finds it necessary, and 3M is not deficient for failing to have done so when it contested this motion.  The Court denies summary judgment on this ground.

## IV.    MOTION FOR SUMMARY JUDGMENT ON VALIDITY

Gerson argues that if the Court determines as a matter of law that Claim 1 is literally, or under the doctrine of equivalents, infringed by the GPS product, it is entitled to summary judgment on the ground that the '111  Patent is invalid for obviousness.  *See* 35 U.S.C. § 103. A patent is presumed valid, 35 U.S.C. § 282, and the party asserting invalidity has the burden of establishing, by clear and convincing evidence, that a patent is invalid.  *See, e.g.*, *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed. Cir. 1999).  Title 35 of the United States Code, Section 103(a) prohibits the issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  Whether a claimed invention is obvious under § 103 is a legal conclusion that depends on underlying factual findings.  *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997).  The Supreme Court has outlined which factual findings are relevant to the obviousness consideration:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined.   Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).  "In an infringement suit before a district court, the invalidity of a patent . . . must be decided on the basis of prior art adduced **in the proceeding before the court**."   *Quad Envtl. Tech. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 875-76 (Fed. Cir. 1991) (quotation omitted and emphasis added).

3M puts forth four arguments against a finding of invalidity for obviousness. First, it argues that Gerson never disclosed its intention to argue the invalidity of the patent.  Second, 3M argues that Gerson has impermissibly relied on attorney argument in lieu of expert testimony to support its assertion of obviousness.  Third, even if the Court is to credit attorney argument as evidence, summary judgment is precluded because of genuine issues of material fact over the disclosures of the prior art references and existence of a motivation to combine them.   Finally, secondary factors of non-obviousness create an additional ground for denying summary judgment.

Gerson argues that a combination of the prior art discloses all the limitations of Claim 1, that Claim 1 is *prima facie* obvious over the combination of the prior art, and that secondary considerations of non-obviousness cannot overcome the *prima facie* evidence of obviousness.

### A.  Procedural Considerations

3M argues that Gerson never disclosed its intention to argue the invalidity of the patent, therefore the Court should not grant summary judgment to Gerson on this basis. Gerson clearly raised an argument regarding the obviousness of Claim 1 as taught by Kaltenbach for steps (a) through (f) and Sapien and Morrison for step (g) in other filings before this Court and the PTO.  (Decl. of Thomas J. Oppold in Supp. of Defs.' Reply, Exs. 34 at 21-33, 35 at 29-33, 36 at 6-17, Docket No. 88.)  3M's request to bar Gerson from arguing the obviousness of the '111 Patent is unavailing.

### B.  The Scope and Content of the Prior Art and Differences between the Prior Art and Claim 1 of the '111 Patent

"To ascertain the scope of the prior art, a court examines the field of the inventor's endeavor, and the particular problem with which the inventor was involved, at the time the invention was made[.]"  *Monarch Knitting Mach. Corp. v. Sulver Morat GmbH,* 139 F.3d 877, 881 (Fed. Cir. 1998) (internal quotation marks and citations omitted).  "When no prior art other than that which was considered by the PTO examiner is relied on by the attacker [], he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job . . . ."  *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353 (Fed. Cir. 2001) (quoting *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)).  "Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony. It does not, and cannot, support [defendant]'s

burden on summary judgment." *Invitrogen Corp. v Clontech Labs., Inc.*, 429 F.3d 1052,

1068 (Fed. Cir. 2005). However,

> expert opinions [are not] always a prerequisite [for an obviousness finding],
> for in many patent cases expert testimony will not be necessary because the
> technology will be easily understandable without the need for expert
> explanatory testimony. . . . [W]hile an analysis of obviousness **always**
> depends on evidence that supports the required *Graham* factual findings, it
> also may include recourse to logic, judgment, and common sense available
> to the ordinary person of ordinary skill . . . . .

*Perfect Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1325, 1329 (Fed. Cir. 2009)

(internal quotation marks and citations omitted; emphasis added).

### 1.    Sufficient Evidence Argued

Gerson argues that the combination of the teaching of the Kaltenbach Patent, U.S.

Patent No. 3,432,104 (the '104 Patent), with the teachings of the Sapien Patent, U.S.

Patent No. 4,151,929 (the '929 Patent), and the Morrison Patent, U.S. Patent

No. 3,401,842 (the '842 Patent), disclose all limitations of Claim 1. Gerson suggests that

"[t]he Court can clearly read and understand these simple patents without the need for

expert opinions and can apply basic common sense and logic to conclude that

Kaltenbach, in view of Sapien and/or Morrison . . . yields . . . the claims obvious."

(Defs.' Reply at 6, Docket No. 107.) 3M notes that Gerson did not submit any expert

reports addressing invalidity and relies entirely on attorney argument. Further, 3M points

to the testimony of three of Gerson's witnesses, each of whom states he is not giving

opinions on the invalidity or obviousness of the '111 Patent. (Paul Decl., Exs. 41, 13:16-

14:16 (Pulsifer Expert Dep.), 40, 9:9-11 (Brunell Expert Dep.), 43, 11:24-25 (Gemini Dep.).)

Though Gerson has not provided expert testimony or evidence beyond attorney argument, the Court will consider its arguments regarding the similarities between the prior art and '111 Patent. *Perfect Web Technologies, Inc.*, 587 F.3d at 1329. However, the Court does so while giving weight to 3M's expert reports and the determinations of the PTO.

### 2.      Whether Step (a) is Disclosed by Kaltenbach

Though Gerson has not presented **any** expert testimony regarding whether Kaltenbach discloses step (a) and relies entirely on attorney argument, applying "basic common sense and logic," the Court finds that the prior art does not render the '111 Patent obvious, and that there are differences between the prior art and the '111 Patent. Gerson claims in relation to step (a) of Claim 1 that "Kaltenbach discloses a liner having a base . . . capable of standing unsupported . . . ." (Def.'s Mot. for Summ. J. at 32.)  The relevant specification in the '104 Patent provides "[a] liner with the bottom sealed at (25) to form a container.  The upper end of liner is open . . . The liner is preferably constructed of a flexible plastic film material so as to render the liner liquid-tight . . . ." '104 Patent col. 2, ll. 56-61.

The testimony of 3M's expert, Dr. Erdman, raises a genuine issue of material fact regarding whether Kaltenbach discloses step (a):

> The liner of Kaltenbach ends in a relatively wide seam and there is no
> indication in the patent that it is capable of standing unsupported in the

manner required by limitation (a).  To the contrary, the patent states that the
paint cup provides support for the liner . . . Consequently it is my opinion
that Kaltenbach does not disclose the step of providing a liner that is
capable of standing unsupported in the manner required by step (a).

(Erdman Rep. at 36-37) (citations omitted).

Consideration of the language in '104, "Figure 2" of the '104 Patent, and the

testimony of Dr. Erdman suggests that the '104 patent did not explicitly teach a liner

capable of standing unsupported.  The plain language of the '104 Patent instead suggests

a bag made of a thin film with no base, which would arguably be unable to stand

unsupported.  Thus step (a) of the '111 Patent should not be considered obvious under

§ 103 based on Kaltenbach's patent.

### 3.    Whether Step (d) is Disclosed by Kaltenbach

Gerson also states in relation to step (d) that "Kaltenbach discloses attaching to the

combination of the outer container (30) and liner (20) a lid (28) which covers the opening

of the container . . . ." (Def.'s Mot. for Summ. J. at 32.).  The relevant language from the

'104 Patent states: "Thread (29) in cover (28) coacts with cup thread (31) to engage cup

(30) and liner (20) with gasket (18), and **to seal and render the entire cup structure**

**ready for use**." '104 Patent col. 3, ll. 11-13 (emphasis added).  Though "Figure 3" of the

patent appears to depict a lid covering the "opening," the '104 language does not **require**

the lid to cover the opening.  At the very least the specifications do not make clear that

the lid must cover the opening, thus the Court finds that Kaltenbach does not disclose

step (d) of the '111 Patent.

**4.      Whether Step (g) is Disclosed by Morrison and/or Sapien**

Though the district court is not required to give deference to the findings of the

PTO, such findings can be instructive.  *McGinley*, 262 F.3d at 1353.  In its *inter partes*

re-examination of the '111 Patent, the patent examiner made the following findings

regarding step (g) of Claim 1:

- "With regard to Heard '360, the prosecution history of the application that became the Joseph et al. patent ['111 Patent] indicates that the prior art did not show the method step of 'removing the liner from the outer container together with the lid, wherein the lid engages the liner so that the liner can be lifted from the outer container together with the lid.'"

- "It is **not agreed** that Morrison, either alone or in combination, raises a substantial new question of patentability with regard to claims 1-5 of the Joseph et al. '111 patent . . . The passage cited by [Gerson] in Morrison (column 3, lines 4-16) and Figure 3 do not show or mention the removal of the lid with the liner."

- "It is **not agreed** that Sapien, either alone or in combination, raises a substantial new question of patentability with regard to claims 1-5 of the Joseph et al. '111 patent . . . The passage cited by [Gerson] in Sapien (column 4, line 50 – column 5, line 29) and Figures 4-6 do not show or mention the removal of the lid with the liner."

- "It is **not agreed** that Kaltenback [sic], either alone or in combination, raises a substantial new question of patentability with regard to claims 1-5 of the Joseph et al. '111 patent."

(Paul Decl. Ex. 10 at 5-8) (emphasis in original).  Applying a common sense analysis to

Gerson's claims, even without relying on 3M's expert or the PTO, the Court's opinion

aligns with that of the PTO: neither Morrison nor Sapien disclosed step (g) of Claim 1.

The '842 Patent (Morrison) describes a process whereby a "paint cup" (similar to

a liner), with its own lid, is inserted into a larger container, onto which a second lid is

fastened.   Removal of the paint cup requires a user to remove the second lid before removing the paint cup's lid and the cup itself.   Relying on the claim language, it is evident that the paint cup's lid **cannot** bring the paint cup out with it.   The paint cup lid does not physically connect to the paint cup at any time after the outer-most lid is removed.   Even if this is not precisely the operation anticipated by the '842 patent, the language of the specification makes clear that step (g) was not disclosed by the '842 Patent.   '842 Patent col. 3, ll. 74-75 ("The original paint cup or filler (32) and its cover (35) are then removed from the receptacle . . . .")   For Morrison to disclose the limitation of step (g), the '842 Patent would need to describe how the lid and liner are connected so they can be removed together.   The plain language of the specification does not support this reading.

The '929 Patent (Sapien) is equally unavailing for Gerson's argument.   The '929 Patent describes a system where a lid can be easily removed and placed back on a liner many times to facilitate the commercial painting process at paint shops.   '929 Patent col. 4, ll. 28-31.   The Court agrees with the PTO's analysis that "the passages cited by [Gerson] . . . do not show or mention the removal of the lid with the liner.   There is no mention of the lid being removed with the liner, only the **collar and liner** are removed together.   Further, it appears that the lid (34) is removed with lid (14) **prior** to removal of the liner."   (Paul Decl. Ex. 10 at 7, Docket No. 105) (emphasis added).)   Because the '929 Patent does not disclose a method of removing the liner **with** the lid, it does not disclose step (g) of Claim 1.

5.        **Motivation to Combine**

A party seeking to invalidate a patent based on an obvious combination of references must show, by clear and convincing evidence, that a skilled artisan would have been motivated to combine the teachings of the references to achieve the claimed invention. *Procter & Gamble, Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009); *In re Kotzab*, 217 F.3d 1365, 1370 (Fed. Cir. 2000) ("[I]dentification in the prior art of each individual part claimed is insufficient to defeat patentability of the whole claimed invention. Rather, to establish obviousness based on a combination of the elements disclosed in the prior art, there must be some motivation, suggestion or teaching of the desirability of making the specific combination that was made by the applicant." (citation omitted)).  The Supreme Court has held that

> [t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. . . . Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.

*KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 416, 420 (2007).  However,

> [c]lose adherence to this methodology [considering the mind of one of ordinary skill in the art at the time of the invention] is especially important in cases where the very ease with which the invention can be understood may prompt one to fall victim to the insidious effect of a hindsight syndrome wherein that which only the invention taught is used against its teacher.

*In re Kotzab*, 217 F.3d at 1369 (quotations omitted).

Gerson argues that Claim 1 is *prima facie* obvious over the combination of Kaltenbach and Sapien and/or Morrison.  Specifically, Gerson argues that "the only

patentable distinction identified by the USPTO was the alleged missing step (g).  The solution to this problem was explicitly taught by both Sapien and Morrison – two references from the same field of endeavor." (*Id.* at 39.)  It is unclear what Gerson means by "the only patentable distinction," as Gerson fails to provide a citation to support the statement.   The PTO determined that the '111 Patent was **not** obvious in its re-examination decision, and that Kaltenbach, Sapien, and Morrison did not raise substantial new questions of patentability.  (Paul Decl. Ex. 10 at 5-8.)

Gerson does highlight several features of the Sapien and Morrison patents that suggest an anticipated need that both those patents and the '111 Patent strive to solve:

> Sapien specifically recognized the desire to reduce paint solvent or cleaning solutions and to reduce cleanup time by utilizing a disposable liner in the paint cartridge.  Likewise, Morrison utilized a disposable "filler element" or cartridges which would prevent paint waste, enable rapid color changes by minimizing the amount of time and effort for cleanup.   Kaltenbach explicitly stated that it was an object to provide a gravity cup or siphon cup that utilized a disposable liner that was sealed . . . .

(Def.'s Mot. for Summ. J. at 39.)   Thus, Gerson has provided some support for its argument that the '111 Patent meets needs anticipated by other patents, but such limited support cannot overcome the other deficiencies in Gerson's arguments.

Most relevantly, Gerson points to no evidence that the Sapien, Morrison, or Kaltenbach patents anticipate a need to remove the liner with the lid, nor that a person of ordinary skill attempting to create such a product would find it obvious or necessary to create a lid and liner that "engage with" each other.  Thus, the necessary "motivation to combine" was absent from the '111 Patent's invention, and Gerson's argument does not convince otherwise.

### C.     Ordinary Level of Skill in the Art

The parties do not raise an issue about the ordinary level of skill in the art in this motion.  (Def.'s Mot. for Summ. J. at 37) ("For the purpose of this summary judgment motion only, Gerson will assume the level of ordinary skill in the art is the same as asserted by 3M's expert.").

### D.     Secondary Considerations of Obviousness

Where a defendant fails to establish that the claimed invention would have been *prima facie* obvious based on the first three *Graham* factors, the Court need not consider the fourth factor of objective evidence of non-obviousness.  *Rockwell Int'l Corp v. United States*, 147 F.3d 1358, 1366-67 (Fed. Cir. 1998) ("Because we hold that genuine issues of material fact relating to the first three *Graham* factors preclude determination of obviousness on summary judgment, we need not ascertain whether these secondary considerations are determinative of nonobviousness here.").

Genuine issues of material fact exist between the parties relating to the relationship between the prior art and the '111 Patent, thus summary judgment is not appropriate.  The Court need not determine the import of the secondary considerations of non-obviousness to rule on this motion for summary judgment.

### V.     VALIDITY OF CLAIMS 2-5

Finally, Gerson makes a brief argument that Claims 2-5 of the '111 Patent are invalid as obvious under Kaltenbach in view of Sapien and/or Morrison.  3M does not

address the validity of these claims in its brief.  All arguments related to Claims 2-5 are attorney arguments without supporting expert opinions or explication as to how an ordinary person could understand the claims to have been disclosed by Kaltenbach, Morrison, and Sapien.  As such, the Court declines to grant summary judgment to Gerson on the validity of Claims 2-5.

## ORDER

Based on the foregoing, all the records, files, and documents pertaining thereto, **IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment of Non-Infringement and Invalidity Motion [Docket No. 85] **DENIED**.

DATED:  March 16, 2011
at Minneapolis, Minnesota.

s/ John R. Tunheim

JOHN R. TUNHEIM
United States District Judge